UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DOMINIC SESSION                                                                          PLAINTIFF
ADC #135040

V.                          No. 4:20-CV-00854-DPM-JTR

BRIGGS, Major,
Pulaski County Jail, *et al.*                                                          DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Dominic Session ("Session") has filed a *pro se* § 1983 Complaint and Amended Complaint alleging that Defendants violated his constitutional rights while he was incarcerated at the Pulaski County Regional Detention Facility ("PCRDF").

*Docs. 2 & 4*.[1] After screening his Complaint and Amended Complaint,[2] Session was allowed to proceed with his claims against former PCRDF Major Matthew Briggs ("Briggs"), PCRDF Captain Kelly Paxson ("Paxson"), and PCRDF Captain Tracy Hobbs ("Hobbs"). *Docs. 11 & 13*.

## II. Discussion

On April 28, 2021, Defendants filed the pending Motion to Dismiss (*Doc. 28*), and on July 20, 2021, they filed the pending Motion for Summary Judgment (*Doc. 36*). Session has filed Responses to both Motions and they are now ready for decision.

### A. Defendants' Motion to Dismiss

On March 17, 2021, Defendants filed a Motion to Compel Session to respond to their Interrogatories and Requests for Production of Documents. *Doc. 25*. Among other things, the Motion alleged that Session had failed to respond to one of their Requests for Production which contained an accompanying medical authorization they requested him to sign and return. Session did not file a Response to the Defendants' Motion to Compel.

---

[1] The Court construes Session's *pro se* Complaint and Amended Complaint, together, as constituting his claims. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (pro se complaint must be "liberally construed" and "pro se litigants are held to a lesser pleading standard than other parties"); *Kiir v. N.D. Pub. Health,* 651 F. App'x 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint).

[2] *See* 28 U.S.C. § 1915A.

2

On April 9, 2021, I entered an Order granting Defendants' Motion to Compel. *Doc. 27*. My Order required Session to respond to this discovery and specifically directed him to sign the medical authorization form, within fourteen (14) days, if he wished to proceed with this case. *Id*. The Court advised Session that his failure to sign and return the medical authorization form might result in the dismissal of this action, without prejudice. *Id*.

On April 27, 2021, Defendants filed a Motion to Dismiss for failure to prosecute, stating that Session had not complied with the Court's Order directing him to sign and return the medical authorization form. *Doc. 28*.

In an Order, dated April 30, 2021, the Court directed Session to file a Response that: (1) explained why he failed to timely comply with the Court's Order; (2) and stated whether he wished to proceed with this action. *Doc. 30*. The Court cautioned Session that, if he failed to timely respond to the Order, his claims could be dismissed, without prejudice. *Id*.

On June 2, 2021, the April 30th Order was returned to the Clerk "undeliverable." *Doc. 31*. On June 3, 2021, the Court received a letter from Session stating that "[he had not] heard anything from the Court about [his] case in months" and if any filings had been sent to him, "[he had not] received them." *Doc. 33*. Session's letter also asked that his case not be dismissed. *Id*.

On June 4, 2021, Defendants filed a Motion to Stay or Extend the Discovery and Summary Judgment Deadlines, until Session complied with the Court's April 9th Order requiring him to respond to *all* of Defendants' interrogatories and requests for production of documents. *Doc. 32*. By filing this Motion, Defendants acknowledged that Session did not receive my April 30th and April 9th Orders.

On June 7, 2021, I entered an Order that: (1) granted Defendants' Motion to Stay or Extend the Discovery and Summary Judgment Deadlines (*Doc. 32*) for thirty (30) days; (2) directed the Clerk to mail Session copies of Defendants' Motion to Compel (*Doc. 25*), the Court's April 9, 2021 Order (*Doc. 27*), Defendants' Motion to Dismiss (*Doc. 28*), and the Court's April 30, 2021 Order (*Doc. 30*); and (3) ordered Session to provide Defendants with a signed medical authorization form and a response to their Requests for Production, within 14 days. *Doc. 34*.

On June 24, 2021, Session complied with the Court's June 7th Order and provided Defendants' counsel with responses and the requested fully executed medical authorization form. *Doc. 35*. Accordingly, Defendants' Motion to Dismiss (*Doc. 28*) should be denied, as moot.

**B. Defendants' Motion for Summary Judgment[3]**

---

[3] Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). An assertion that a fact cannot be disputed, or is genuinely disputed, must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

In his Complaint, Session alleged that, on May 13, 2020, he was eating lunch from a food tray provided to him by Deputy Gibson, a non-party to this action. *Doc. 2 at 4*. Session alleges he bit down on a metal key that was hidden in his food. *Id*. This caused Session to chip a tooth and injure his throat. *Id*. Session told Deputy Gibson about the incident and he or she notified two non-party sergeants. *Id*. The sergeants entered Session's unit, took photos of the key, and completed an incident report. *Id.*

Session alleges another inmate named Malik Wallace "almost choked and died" after nearly swallowing a key found in his food on May 24, 2020.[4] *Id. at 5*. Session alleges these two incidents were not accidents and speculates that an unknown "dirty deputy" at PCRDF intentionally hid the key in his food in an attempt to injure him. *Id.*

Based on these allegations, Session asserts a corrective inaction claim against former PCRDF Major Briggs, Captain Paxson, and Captain Hobbs. *Id.*[5] Session does *not* allege that these three Defendants were personally involved in placing the key in his food on May 13, 2020, or that they were otherwise involved in attempting to

---

those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

[4] Session and Wallace both attempted to initiate this action as co-Plaintiffs. *Docs. 2 & 4*. Their claims were severed (*Doc. 3 at 1*), and Wallace is now proceeding with his claims in a separate action. *See Wallace v. Briggs,* No. 4:20cv855-DPM-JTR.

[5] Session's Complaint also named "Ms. Williams, Kitchen Supervisor." *Doc. 2 at 2*. However, because he made no allegations or claims against her, she was dismissed as a party to this action. *Doc. 11 at 3-4*; *Doc. 13*.

harm him. Rather, he contends "there is a serious breach-of-security goin[g] on [at PCRDF] that the chief of security, and deputy chief of security (Mjr Briggs, Cpt. Paxton, Cpt. Hobbs) refuses to address!" *Id*.

Session also asserts a conclusory inadequate medical care claim and alleges he did not receive proper treatment for the injuries to his tooth and throat. *Id.* As the *only named Defendants*, Session presumably believes Briggs, Paxson, and Hobbs are responsible for him receiving inadequate medical care.

Finally, Session broadly alleges a claim that the grievances he submitted complaining about the May 13, 2020 incident and the inadequate medical attention he received for his injuries were not properly processed or responded to. *Id*. Because Session does not specifically identify the individual or individuals who failed to process and respond to those grievances, it appears he is also asserting this claim against Briggs, Paxson, and Hobbs.

On July 20, 2021, Defendants filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts. *Docs. 36-38*. On August 17, 2021, Session filed his Response and Statement of Disputed Facts. *Docs. 40-41*.

### 1. Session's Corrective Inaction Claims Against Briggs, Paxson, and Hobbs

In *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995), the Eighth Circuit set out the narrow contours of "supervisory liability" and the essential elements required to find a supervisor liable for a constitutional violation committed by another employee:

6

> In the section 1983 context, supervisor liability is limited. A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions. *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Rather, a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir.1993). "'**The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see**.'" *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir.1994) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)).

*Boyd*, 47 F.3d at 968 (emphasis added; footnote omitted).

Here, Briggs, Paxson, and Hobbs were all supervisory officers. According to Session, they failed to address a so-called "serious breach of security" that supposedly led to Session biting down on a key hidden in his food. Session does not allege that these three Defendants had any personal involvement in hiding the key in his food tray or that they had any knowledge that someone else had allegedly hidden the key in Session's food. Accordingly, to establish "supervisory liability," against these three Defendants, Session must come forward with facts demonstrating that they "[knew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [they] might see." *Id*.

In their Affidavits, Briggs, Paxson, and Hobbs each declare "[t]he May 13, 2020 incident [involving Session finding a key in his food] was not reported to [them]." *Doc. 38, Ex. B at ¶ 4; Ex. C at ¶ 4; Ex. D at ¶ 5*. Further, Defendants Paxson and Hobbs also declare that they "had no knowledge of the May 13, 2020 incident

7

until the filing of the instant lawsuit." *Doc. 38, Ex. B at ¶ 5; Ex. C at ¶ 5*. Finally, Defendant Briggs states that, during the relevant time, "from March 2020 – June 2020, [he] was out of the [PCRDF] pursuant to the Family and Medical Leave Act." *Doc. 38, Ex. D, ¶ 4*.

In his Statement of Disputed Facts, Session *speculates* that Briggs, Paxson and Hobbs *must have known* of the May 13, 2020 incident because "[Session] had [his] family callin[g] [PCRDF] every day for [two] weeks" after the incident. *Doc. 41 at 4*. Such speculation by Session falls *far short* of *the facts* required to controvert the facts stated in the Affidavits of Briggs, Paxson, and Hobbs. *See* Fed. R. Civ. P. 56(e); Local Rule 56.1(c).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only if* there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)) (emphasis added). "When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp,*, 475 U.S. 574, 586–87 (1986)).

Here, the record is devoid of *any* facts suggesting that Briggs, Paxson, or Hobbs knew anything about the May 13, 2020 incident *until after Session filed this lawsuit*. Likewise, Session has proffered no facts to controvert the sworn statements

of Briggs, Paxson, and Hobbs that they did not facilitate, approve, condone, or turn a blind eye to the incident.

Accordingly, Defendants' Motion for Summary Judgment should be granted, as to Session's corrective inaction claim against Defendants Briggs, Paxson, and Hobbs. *See Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790–91 (8th Cir. 2009) (affirming summary judgment on Plaintiff's § 1983 claim because he failed to carry his burden of proffering sufficient evidence to permit a finding in his favor where his alleged evidence amounted to "[m]ere allegations, unsupported by specific facts or evidence beyond [his] own conclusions.") (citations omitted).

### 2. Session's Inadequate Medical Care Claim Against Briggs, Paxson, and Hobbs

As a result of biting down on the key in his food on May 13, 2020, Session alleges that he damaged his tooth, and "they refuse to pull it, and my throat was damaged for weeks. I couldn't even swallow [without] extreme pain so I couldn't eat for a week!" *Doc. 2 at 5*. Because Briggs, Paxson, and Hobbs are the only named Defendants, it appears Session also believes they are responsible for refusing to allow Session's tooth to be pulled and denying him medical treatment for his injured throat.

Defendants' Statement of Material Facts makes it clear that "[d]ecisions and actions regarding health care services provided to inmates are the sole responsibility of qualified health care personnel." *Doc. 38 at ¶ 34*. Moreover, "judgments regarding

an inmate's health care needs … rest with the PCRDF Medical Director, the physician contracted by Pulaski County and licensed to practice in the State of Arkansas," and "[s]ituations which require medical or psychiatric judgment will be the sole responsibility [of] the physician and/or designee …." *Doc. 38, Ex. A at ¶ 10*; *Doc. 38 at 10, ¶ 35*. Because Session did not refute these facts, they are now *admitted* for purposes of Defendants' Motion for Summary Judgment. *See* Local Rule 56.1(c).

Briggs, Paxson and Hobbs are *not* "medical personnel."[6] In their Affidavits, each of them state that: (1) "[Session] did not inform [them] that he was in need of medical care for alleged injuries stemming from the May 13, 2020 incident;" and (2) "[Session] did not inform [them] that he was being denied medical care or being provided with inadequate medical care for alleged injuries stemming from the May 13, 2020 incident." *Doc. 38, Ex. B, C & D at ¶¶ 6-7*.[7] "Thus, because they did not

---

[6] The May 13, 2020 Jail Incident Report states, among other things, that: (1) Session "discovered that he had a key in his food after biting into it;" (2) "Inmate Session complained of tooth pain;" and (3) "*[m]edical personnel* entered the unit, assessed the inmate and cleared him to remain in the facility." *Doc. 40 at 7* (emphasis added).
    A separate Jail Incident Report, dated May 15, 2020, states, among other things, that: (1) "*Medical*" was contacted to assess inmate Session; (2) non-party Nurse Burrow "assessed inmate Session;" and (3) Nurse Burrow "did not observe any distress in Inmate Session's mouth or throat and cleared him to remain in the facility." *Doc. 38, Ex. A4 at 5*.

[7] Under well-established Eighth Circuit case law, Briggs, Paxson, and Hobbs can only be liable for the alleged inadequate medical care Session received if he can demonstrate they "personally participated in or had direct responsibility for the alleged violations" or they "actually knew of, and w[ere] deliberately indifferent to or tacitly authorized, the unconstitutional acts." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), *as amended* (Mar. 4, 2016) (internal quotations and citation omitted).

have a reason to believe … that [PCRDF] doctors or their assistants [were] mistreating (or not treating) [Session], [Briggs, Paxson, and Hobbs] cannot be held liable for cruel and unusual punishment in violation of the Eighth Amendment." *Saylor*, 812 F.3d at 644 (internal quotations and citations omitted).

Accordingly, Defendants' Motion for Summary Judgment should be granted, as to Session's inadequate medical care claim against Briggs, Paxson, and Hobbs.

### 3. Session's Claim that His Grievances Were Not Properly Processed

Finally, Session asserts that his grievances about the May 13 incident and the inadequate medical care he received for his injuries were not properly processed or responded to. *Doc. 2 at 5*. As the only named Defendants, it appears Session believes Briggs, Paxson, and Hobbs are the officers who were involved in failing to properly process and respond to his grievances.

The Eighth Circuit has made it clear that, because prisoners do not have a constitutional right to a prison grievance procedure, a prison official's failure to properly process a grievance, standing alone, is not actionable under § 1983. *Walker v. Bertsch,* 745 F. App'x 664, 664 (8th Cir. 2018) (holding that prisoner had no viable due process claim regarding the prison's grievance system, as the grievance system does not give rise to a liberty interest requiring due process protection); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances and regulating

access to his attorney were insufficient to state a "substantive constitutional claim"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms).

Accordingly, Defendants' Motion for Summary Judgment should also be granted on Session's claim that Briggs, Paxson, and Hobbs failed to properly process and respond to his grievances.

## II. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's Motion to Dismiss (*Doc. 28*) be DENIED as moot.

2. Defendants' Motion for Summary Judgment (*Doc. 36*) be GRANTED, and that this action, in its entirety, be dismissed.

DATED this 2nd day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE